UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                      :

UNITED STATES OF AMERICA        :
                                        :

        -*v.*-                  :        S1 20 Cr. 437 (NRB)
                                        :

KARIM ELKORANY,               :
                                        :

                      Defendant.     :
                                        :
------------------------------------------------------------x


# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

AUDREY STRAUSS
United States Attorney
Southern District of New York


Lara Pomerantz
Amanda L. Houle
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
- Of Counsel -

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................................... 1

    I.    The Original and Superseding Indictments ................................................... 1

    II.    The Search Warrants ................................................................................... 2

        A.  The Facebook Warrant ............................................................... 2

        B.  The Google Warrant ................................................................... 4

        C.  The Apple Warrant ..................................................................... 6

ARGUMENT ......................................................................................................................... 7

    I.    The Defendant's Motion to Suppress Is Meritless ...................................... 7

        A.  The Search Warrants Were Amply Supported by Probable Cause ...................... 8

            1.  Applicable Law ................................................................. 8

            2.  Discussion ...................................................................... 10

                a.  The Facebook Warrant ................................................. 10

                b.  The Google Warrant ..................................................... 12

                c.  The Apple Warrant ....................................................... 15

        B.  The Search Warrants Were Sufficiently Particular ........................................... 16

            1.  Applicable Law ............................................................... 16

            2.  Discussion ...................................................................... 17

        C.  The Search Warrants Were Not Overbroad ........................................................ 21

            1.  Applicable Law ............................................................... 21

            2.  Discussion ...................................................................... 23

        D.  The Search Warrants Were Executed in Good Faith ........................................ 27

            1.  Applicable Law ............................................................... 28

            2.  Discussion ...................................................................... 29

CONCLUSION ...................................................................................................................... 31

<h1>TABLE OF AUTHORITIES</h1>

Cases

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) .................................................................. 14

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ........................................................ 28

*Gonzalez v. United States*, No. 16 Civ. 1494 (KAM), 2018 WL 1597384 (E.D.N.Y. Mar. 31, 2018) ...................................................................................................................................... 14

*Herring v. United States*, 555 U.S. 135 (2009) .......................................................................... 28

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................................................ *passim*

*In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxx@gmail.com Maintained at a Premises Controlled by Google, Inc.*, 33 F. Supp. 3d 386 (S.D.N.Y. 2014) ...................................................................................... 22, 23, 24, 25

*Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998) ................................................................... 18

*Texas v. Brown*, 460 U.S. 730 (1983) .......................................................................................... 9

*United States v. Barthelman*, No. 13 Cr. 10016 (MLB), 2013 WL 3946084 (D. Kan. July 31, 2013) ...................................................................................................................................... 20

*United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347 (S.D.N.Y. Oct. 9, 2020) .... 22

*United States v. Botti*, 711 F.3d 299 (2d Cir. 2013) .................................................................... 18

*United States v. Bowen*, 689 F. Supp. 2d 675 (S.D.N.Y. 2010) .................................................. 24

*United States v. Cancelmo*, 64 F.3d 804 (2d Cir. 1995) ............................................................. 30

*United States v. Chalavoutis*, No. 18 Cr. 349 (JS) (AKT), 2019 WL 6467722 (E.D.N.Y. Dec. 2, 2019) ...................................................................................................................................... 11

*United States v. Cioffi*, 668 F. Supp. 2d 385 (E.D.N.Y. 2009) ................................................... 20

*United States v. Clark*, 638 F.3d 89 (2d Cir. 2011) .................................................................... 27

*United States v. Deppish*, 994 F. Supp. 2d 1211 (D. Kan. 2014) ............................................... 20

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) ................................................... 30

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013) .................................... 16, 17, 21

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) ........................................ 17, 25

*United States v. Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) ...................................................... ...................................................................26, 27

*United States v. Jacobson*, 4 F. Supp. 3d 515 (E.D.N.Y. 2014) ............................ 20, 26

*United States v. Leon*, 468 U.S. 897 (1984) ........................................... 9, 28, 29, 30

*United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712 (S.D.N.Y. Feb. 25, 2013).... 17, 27

*United States v. Liu*, 239 F.3d 138 (2d Cir. 2000) ........................................ 17

*United States v. Lustyik*, 57 F. Supp. 3d 213 (S.D.N.Y. 2014) .................................... 19

*United States v. Martino*, 664 F.2d 860 (2d Cir. 1981) ................................. 14

*United States v. McDarrah*, No. 05 Cr. 1182 (PAC), 2006 WL 1997638 (S.D.N.Y. July 17, 2006), *aff'd*, 351 F. App'x 558 (2d Cir. 2009) ...................................................... 24

*United States v. Moore*, 968 F.2d 216 (2d Cir. 1992) .......................................... 29, 30

*United States v. Nejad*, 436 F. Supp. 3d 707 (S.D.N.Y. 2020) ............................... 20, 22

*United States v. Pugh*, No. 15 Cr. 116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ... 19

*United States v. Ray*, No. 20 Cr. 110 (LJL), 2021 WL 2134861 (S.D.N.Y. May 26, 2021) .......................................................... ……..19, 22, 24

*United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015) ........................................... 28

*United States v. Redzepagic*, No. 17 Cr. 228 (DRH), 2020 WL 5232066 (E.D.N.Y. Sep. 2, 2020) .......................................................... 22

*United States v. Riley*, 906 F.2d 841 (2d Cir. 1990) ................................. 16, 17, 19, 22

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ........................................ 9

*United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010) ........................................................ 28

*United States v. Singh*, 390 F.3d 168 (2d Cir. 2004) ...................................... 12, 14, 28

*United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993) ......................................................... 9

*United States v. Stacy*, 802 F. App'x 611 (2d Cir. 2020) ............................................. 30

*United States v. Stokes*, 733 F.3d 438 (2d Cir. 2013) .................................................. 28

*United States v. Travisano*, 724 F.2d 341 (2d Cir. 1983) ....................................... 9, 12

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017) ............................................ 16, 21

*United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039 (S.D.N.Y. Oct. 10, 2014)......
........................................................................................................................... 22, 23, 24

*United States v. Ventresca*, 380 U.S. 102 (1965) ............................................... 9, 10, 25

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1993) .................................................... 9

The Government respectfully submits this memorandum of law in opposition to the motion to suppress filed by defendant Karim Elkorany (Dkt. No. 35 ("Def. Mot.")).  For the reasons that follow, the defendant's motion is meritless and should be denied.

## BACKGROUND

This case arises from a years-long investigation conducted by the Federal Bureau of Investigation ("FBI") into the defendant, a former employee of the United Nations (the "UN"), who repeatedly drugged and sexually assaulted, or attempted to sexually assault, multiple women over at least a decade, and then tried to conceal his conduct through, among other things, lying to FBI agents about the drugging and sexual assault of a particular female victim ("Victim-1").

## I.    The Original and Superseding Indictments

On August 27, 2020, a grand jury in this district returned a two-count indictment (the "Original Indictment") charging the defendant with two counts of making false statements to FBI agents, in violation of 18 U.S.C. § 1001.  On September 2, 2020, the defendant was arrested on the charges in the Original Indictment.  On October 22, 2020, a grand jury in this district returned a three-count superseding indictment (the "Superseding Indictment") charging the defendant with two counts of making false statements to FBI agents, in violation of 18 U.S.C. § 1001 (Counts One and Two), and one count of assaulting an internationally protected person, in violation of 18 U.S.C. § 112 (Count Three).

In addition to setting forth the specific charges against the defendant, the Superseding Indictment provides detail about the conduct underlying those charges.  The Superseding Indictment alleges that between in or around September 2009 and in or around 2019, the defendant drugged and sexually assaulted, or attempted to sexually assault, at least seven women in the United States, Iraq, and Egypt, among other locations, after they were rendered unconscious, including after consuming beverages prepared or presented by the defendant.  (Superseding

Indictment ¶¶ 2, 4).  The Superseding Indictment also describes the defendant's conduct as to two victims.  In particular, the Superseding Indictment alleges that in 2016, the defendant, while working for the UN in Iraq, drugged and sexually assaulted Victim-1.  (*Id.* ¶¶ 2, 6).  The defendant thereafter attempted to conceal that assault through, among other things, false statements to federal agents investigating that drugging and assault.  (*Id.* ¶¶ 2, 3, 9).  Specifically, in or about November 2017, the defendant falsely denied the allegations made by Victim-1 and further falsely stated that he had never provided drugs to Victim-1.  (*Id.* ¶¶ 3, 9).  The defendant also drugged and sexually assaulted a female victim ("Victim-2") on multiple occasions between in or around 2014 and in or around 2019.  (*Id.* ¶ 5).  Victim-2 worked as a contractor for a UN organization at times relevant to the Superseding Indictment, including in or about October 2015.  (*Id.*).

## II.    The Search Warrants

### A.  The Facebook Warrant

On July 25, 2017, the Honorable Leda Dunn Wettre, United States Magistrate Judge for the District of New Jersey, issued a search warrant directed to Facebook (the "Facebook Warrant") authorizing the search of the defendant's Facebook account (the "Facebook Account"). (Def. Ex. E (filed under seal[1])).  The Facebook Warrant specified the following subject offenses: Title 18, United States Code, Sections 2241 (aggravated sexual abuse), 2242 (sexual abuse), 1201 (kidnapping), 112 (assault of an internationally protected person), 2421 (transportation for criminal sexual activity), 2422 (enticement for criminal sexual activity), and 2261A (internet stalking). (*Id.* at 4).  The Facebook Warrant detailed the specific categories of types of evidence that constitute evidence, fruits, and/or instrumentalities of those offenses, which law enforcement

---

[1]      As the Court is aware, this and other documents were filed under seal, pursuant to the protective order in this case, because they contain victim and other sensitive information.

personnel were authorized to search for and seize.  The Facebook Warrant did not contain any temporal limitation.

In support of the Facebook Warrant, Jennifer Ranucci, a Special Agent with the FBI, submitted a detailed affidavit (the "Facebook Affidavit") explaining the multiple bases to conclude that the Facebook Account had been used in connection with the subject offenses.  (Def. Ex. A (filed under seal)).  The Facebook Affidavit included a summary of information provided by four victims regarding their experiences with the defendant.  In particular, the Facebook Affidavit described how the defendant drugged and sexually assaulted, or attempted to sexually assault, those four victims over a period of four years; how certain of the victims experienced genital and/or anal pain after regaining consciousness; how the defendant informed one of the victims after she lost consciousness that they had engaged in sexual intercourse, oral sex, and anal sex; and how the victims suffered substantial emotional distress after these incidents.  (*Id.* ¶¶ 22-26).

The Facebook Affidavit also set forth reasons to believe that the defendant used his Facebook Account in connection with the subject offenses.  In particular, the Facebook Affidavit described the defendant's use of his Facebook Account to communicate with at least three victims of alleged sexual assaults, including to make plans to see certain of the victims and to communicate with them after the assaults.  (*Id.* ¶¶ 22(e), 23(a), 24(b), (d)).  The Facebook Affidavit also detailed the defendant's pattern of drugging and sexually assaulting women and communicating with them after those assaults in a manner that caused extreme emotional distress to the victims.  (*Id.* ¶¶ 22(c), 26(b)(ii)-(v), 28-29).  For example, the Facebook Affidavit described how the defendant contacted one victim using his Facebook Account the same day that victim had reported the defendant to the UN and again after the UN informed the defendant that he was under investigation.  (*Id.* ¶¶ 26(b)(iv) & (v)).

As stated in the Facebook Affidavit, the FBI previously sought a search warrant for the defendant's Facebook Account on two occasions in June 2017 from the Honorable James C. Francis IV, United States Magistrate Judge for the Southern District of New York. (*Id.* at 23-24 n.8). The Facebook Affidavit explained that it differed from the prior applications submitted to Judge Francis in three principal respects, including, notably, that the prior applications did not allege the subject offense of internet stalking; did not include all of the facts relating to the defendant contacting victims after sexual assaults and close in time to victims' disclosure of information regarding the assaults; and did not include facts relating to messages being sent to one of the victims while the defendant appeared to have been located in New Jersey (which would provide venue in the District of New Jersey, although venue is not an element of any offense, and is proper here for the charges subsequently brought). (*Id.*).

## B. The Google Warrant

On September 2, 2020, the day the defendant was arrested in connection with the Original Indictment, the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, issued a search warrant directed to Google (the "Google Warrant") authorizing the search of the defendant's Google account (the "Google Account"). (Def. Ex. F (filed under seal)). The Google Warrant specified the following subject offenses: Title 18, United States Code, Sections 1001 (false statements to federal agents), 2241 (aggravated sexual abuse), 2242 (sexual abuse), and 112 (assault of an internationally protected person). (*Id.* at 3). The Google Warrant detailed the specific categories of types of evidence that constitute evidence, fruits, and/or instrumentalities of those offenses, which law enforcement personnel were authorized to search for and seize. The Google Warrant limited the dates for which material was to be seized to between September 1, 2009 and December 31, 2017. (*Id.* at 2-3).

In support of the Google Warrant, Elisabeth Granberg, a Special Agent with the FBI, submitted a detailed affidavit (the "Google Affidavit").[2] (Def. Ex. B (filed under seal)). The Google Affidavit attached and incorporated by reference both the Original Indictment and the Facebook Affidavit. It also included a summary of information provided by two additional victims. (*Id.* ¶¶ 16, 20). The Google Affidavit explained the multiple bases to conclude that the defendant was the user of the Google Account and that the Google Account contained evidence of the above-listed subject offenses. In particular, it explained that evidence collected from the defendant's Facebook Account demonstrated that the defendant took, saved, and disseminated photographs of women with whom he had sexual relationships and/or expressed sexual interest, including certain of his victims; maintained documents to keep track of the women with whom he had sexual relationships; and communicated with and about his victims. (*Id.* ¶¶ 15-18). The Google Affidavit also described the defendant's use of the Google Account, identifying specific communications from the defendant to certain victims, as well as the defendant's use of other Internet-based communications applications to communicate with victims. (*Id.* ¶¶ 21-22). In addition, the Google Affidavit set forth Special Agent Granberg's training and experience regarding computer technology and the way electronic devices and communications services are used to further pertinent criminal activity. (*Id.* ¶¶ 1, 23-27). The Google Affidavit further noted that while the defendant's victims identified to date did not appear to qualify as internationally protected persons under 18 U.S.C. § 112, the FBI sought the warrant in part to seek to identify additional victims by reviewing, among other things, documents, communications, and photographs saved in the Google Account. (*Id.* ¶ 28).

---

[2]     At the time the Google Affidavit was submitted to Judge Cott, Special Agent Granberg's last name was Murtha. She has since changed her last name to Granberg.

### C. The Apple Warrant

On January 27, 2021, this Court issued a search warrant directed to Apple (the "Apple Warrant") authorizing the search of the defendant's iCloud account (the "iCloud Account"). (Def. Ex. G (filed under seal)). The Apple Warrant specified the same subject offenses as those listed in the Google Warrant: Title 18, United States Code, Sections 1001 (false statements to federal agents), 2241 (aggravated sexual abuse), 2242 (sexual abuse), and 112 (assault of an internationally protected person). (*Id.* at 4). Similar to the Google Warrant, the Apple Warrant detailed the specific categories of types of evidence that constitute evidence, fruits, and/or instrumentalities of those offenses, which law enforcement personnel were authorized to search for and seize. The Apple Warrant limited the dates for which material was to be seized to between May 29, 2012 and December 31, 2019. (*Id.* at 2).

In support of the Apple Warrant, Special Agent Elisabeth Granberg again submitted a detailed affidavit (the "Apple Affidavit"). (Def. Ex. D (filed under seal)). The Apple Affidavit attached and incorporated by reference both the Superseding Indictment and the Facebook Affidavit. It also referred to information provided by one additional victim, referred to as Victim-2 in the Superseding Indictment, who was an internationally protected person, within the meaning of 18 U.S.C. § 112, at relevant times. (*Id.* ¶ 12). The Apple Affidavit explained the bases to conclude that the defendant was the user of the iCloud Account and the various iCloud features that the defendant used, including iCloud Backup and Messages. (*Id.* ¶¶ 14-19). The Apple Affidavit also explained the multiple bases to conclude that the iCloud Account contained evidence and/or was used as an instrumentality of the above-listed subject offenses. Among other things, Special Agent Granberg described the defendant's use of his Google Account, including instances where Victim-2 communicated with the defendant via his Google Account between 2014 and

2019, as well as his use of Internet-based communications applications to communicate with victims. (*Id.* ¶¶ 26-28). She also identified specific communications between the defendant and his victims through text messages and/or Internet-based communications applications. (*Id.* ¶ 28). The Apple Affidavit also set forth Special Agent Granberg's training and experience regarding computer technology, electronic devices, and communications services and, in particular, her knowledge that iCloud accounts often include messages, emails, documents, and photographs, among other things, which was relevant in light of evidence of the defendant collecting photographs of women with whom he had sexual relations, documents to track his actual or potential sexual partners, and electronic messages between the defendant and his victims. (*Id.* ¶¶ 1, 29-35).

## ARGUMENT

### I. The Defendant's Motion to Suppress Is Meritless

The defendant moves to suppress all evidence obtained through the above-described three search warrants (collectively, the "Search Warrants") for his Facebook, Google, and iCloud Accounts (collectively, the "Electronic Accounts") on the ground that, according to the defendant, each of the Search Warrants lacked probable cause, was insufficiently particular, and/or was overbroad. He is wrong on all counts.

*First*, as the Court knows from its review of the third of the Search Warrants, the warrant applications were lengthy and amply supported by probable cause, including affidavits that detailed evidence that the defendant had committed the offenses under investigation and that the Electronic Accounts contained evidence of those offenses.

*Second*, the Search Warrants were sufficiently particular. They tracked the applicable legal standards for the seizure of electronic evidence, specified the items sought with reference to

particular federal crimes and criminal statutes, and provided an illustrative list of the types of evidence covered by the warrant. No more was required. Indeed, the Search Warrants were far more particularized than warrants routinely upheld in response to challenges like the defendant's.

*Third*, the Search Warrants were not overbroad. On the contrary, they authorized the search and seizure of items as to which three independent federal judges, including this Court, determined there was probable cause—for very good reason.

*Finally*, and in any event, because law enforcement agents relied in good faith on the Search Warrants, suppression would not follow even if the defendant's other arguments had merit (which they do not).

## A. The Search Warrants Were Amply Supported by Probable Cause

The defendant's first contention is that the Search Warrants were not supported by probable cause. (Def. Mot. 10-13). This argument—which rests on mere excerpts of lengthy affidavits, inferences that defy common sense, and a view of probable cause that materially differs from that of settled law—is meritless. As noted above, three different federal judges independently issued the Search Warrants, yet as the defendant would have it, each grossly misapprehended the law. The defendant is wrong.

### 1. Applicable Law

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The legal standard for determining whether a particular warrant application is supported by probable cause is well-established. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him . . . there is a fair probability that

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Such determinations must be approached in a practical way, *id.* at 232, because "probable cause is a flexible, common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742 (1983). For the same reason, the training and experience of law enforcement agents can bear significantly on probable cause determinations. *Gates*, 462 U.S. at 232. Inferences drawn by law enforcement agents based on facts known to them, the totality of the circumstances, and their training and experience can all support a probable cause finding. *Id.* at 231-32. Whatever the mix of information, "[t]he quanta of proof necessary to establish probable cause is 'only the probability, and not a prima facie showing, of criminal activity.'" *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 235). Moreover, "'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)).

With respect to a post-issuance challenge by a defendant, a warrant issued by a neutral and detached judicial officer is "entitled to substantial deference, and 'doubts should be resolved in favor of upholding the warrant.'" *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quoting *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)); *see also Wagner*, 989 F.2d at 72 ("A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. . . . The reviewing court's determination should be limited to whether the issuing judicial officer had a substantial basis for the finding of probable cause." (citations omitted)). This is so because, among other reasons, "[r]easonable minds frequently may differ on the question whether a particular affidavit established probable cause." *United States v. Leon*, 468 U.S. 897, 914 (1984). Accordingly, the Supreme Court has directed that "courts should not

invalidate [a] warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Ventresca*, 380 U.S. at 109.

### 2. Discussion

#### a. The Facebook Warrant

The defendant asserts that the Facebook Warrant was not supported by probable cause because (i) Judge Francis twice denied prior applications for search warrants for the defendant's Facebook Account, albeit not in response to the same affidavit; and (ii) the Facebook Affidavit did not establish probable cause as to one subject offense not presented for Judge Francis's consideration, internet stalking, because, in the defendant's view, the only factual predicate for that particular offense consisted of one purportedly innocuous communication to an alleged victim after a month of silence. (Def. Mot. 11).[3] These arguments do not withstand even basic scrutiny.

The defendant's first argument is meritless. Judge Francis's earlier denial of applications to search the Facebook Account are irrelevant to Judge Wettre's ultimate granting of the Government's amended and expanded application. As described in the Facebook Affidavit, that affidavit was distinct from the affidavits submitted to Judge Francis in that it expanded the scope of the alleged subject offenses and included additional facts, including, in particular, facts bearing on the defendant contacting victims after his sexual assault of them and also close in time to their reporting those assaults to others, as well as facts concerning the defendant's apparent location in the District of New Jersey at the time he messaged one of the victims. (Def. Ex. A at 23-24 n.8). Moreover, as stated in the Facebook Affidavit, Judge Francis indicated to the Government that his denial of the warrant applications was based on his conclusion that the Government had not

---

[3] The defendant also contends that the Facebook Warrant return should be suppressed because the warrant does not contain a temporal limitation. (Def. Mot. 12). This argument should be rejected for the reasons set out in Section II.C.2 below.

presented sufficient factual allegations to demonstrate that the Facebook Account contained evidence of a crime that could be prosecuted in the Southern District of New York. (*Id.*). The Government continues to respectfully disagree with Judge Francis's conclusions. The Government demonstrated probable cause of federal offenses and to the extent Judge Francis may have believed that venue in this district over those offenses was required to be shown, that is incorrect, *see, e.g.*, *United States v. Chalavoutis*, No. 18 Cr. 349 (JS) (AKT), 2019 WL 6467722, at *6 (E.D.N.Y. Dec. 2, 2019). In any event, Judge Francis's prior determinations have no bearing on Judge Wettre's subsequent evaluation of whether an expanded affidavit established a "fair probability that contraband or evidence of a crime" would be found in the defendant's Facebook Account. *Gates*, 462 U.S. at 238. Of course, Judge Wettre, with full knowledge of Judge Francis's prior declinations, could and did conclude that the expanded Facebook Affidavit did establish probable cause—and the defendant does not cogently contend to the contrary. Whether prior applications to search the Facebook Account, *without* such additional facts, might or might not also have established probable cause was not before Judge Wettre and is not before this Court.

As to the defendant's second argument, the Facebook Affidavit describes considerably more than just one so-called "innocuous" communication from the defendant to an alleged victim. As described above, the Facebook Affidavit recounts how the defendant drugged and sexually assaulted, or attempted to sexually assault, four victims over a period of four years and describes how the defendant used his Facebook Account to communicate with the victims. (Def. Ex. A). In particular, the Facebook Affidavit provided a number of specific examples of the defendant's use of his Facebook Account to (i) ask one of the victims about her whereabouts (*id.* ¶ 22(e)); (ii) set a plan to meet up with one of the victims approximately one week before he drugged and sexually assaulted her (*id.* ¶ 23(a)); (iii) discuss plans to see one of the victims and make arrangements to

meet (*id.* ¶ 24(b)); and (iv) discuss former romantic relationships and the defendant's sexual proclivities (*id.* ¶ 24(d)). In addition, the Facebook Affidavit described how the defendant contacted one victim using his Facebook Account the same day that victim had reported the defendant to the UN after not hearing from the defendant for approximately one month and again after the UN formally informed the defendant that he was under investigation. (*Id.* ¶¶ 26(b)(iv)-(v)). Those facts alone easily supported the "practical, commonsense decision" that the defendant's Facebook Account would likely contain evidence of the subject offenses. *See, e.g.*, *Gates*, 462 U.S. at 238; *Travisano*, 724 F.2d at 345 (issuing judge need only find "probable cause to believe that evidence of such crime is located [in the place to be searched]"); *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (noting that the nexus between the items sought and the particular place to be searched "may be based on 'reasonable inference' from the facts presented based on both common sense and experience." (internal quotation marks and citations omitted)). In short, Judge Wettre had more than a "substantial basis," *Gates*, 462 U.S. at 238-39, for concluding that there was probable cause to believe that the defendant's Facebook Account would contain evidence of the subject offenses.

### b. The Google Warrant

The defendant next claims the Google Warrant, too, allegedly was not supported by probable cause. This is so, according to the defendant, because the Google Affidavit "candidly admitted" that the victims identified to date appeared not to qualify as internationally protected persons or had been assaulted outside of the applicable statute of limitations. (Def. Mot. 12). In the defendant's words, because the Google Affidavit supposedly conceded that none of the sexual assaults identified to date could be prosecuted federally, the Google Warrant, as a whole, was no more than an improper "fishing expedition." (*Id.*). That is not so.

The Google Affidavit set forth more than an ample basis to conclude both that the defendant committed the subject offenses and that the Google Account would likely contain evidence of those offenses. As an initial matter, the Google Affidavit incorporated by reference and attached the Original Indictment, which established that a grand jury had found probable cause that the defendant violated 18 U.S.C. § 1001. And there can be no real argument that the evidence sought through the warrant was somehow irrelevant to that offense, including as to the defendant's motive for lying to the FBI. That alone defeats his motion in at least substantial part.

But the Google Affidavit did not simply say that the grand jury had already found probable cause for one offense, and then speculate that perhaps he had also committed other, related offenses. On the contrary, Special Agent Granberg described her training and experience as a law enforcement officer and her personal participation in the investigation of all of the subject offenses, detailed the allegations in the Original Indictment and information in support of those allegations provided by several victims, and discussed her review of records from Google, evidence collected from the Facebook Account, and emails sent by the defendant using his Google Account. (Def. Ex. B).

To be sure, as the defendant correctly notes, the Google Affidavit disclosed that law enforcement had not, by that time, identified a particular victim whom, it believed at that time, the defendant could be charged with drugging and/or sexually assaulting, including because certain assaults appeared to be outside of the applicable statute of limitations. However, a statute of limitations defense is an affirmative one, which a defendant may interpose if he wishes, and may be defeated by, among other things, any applicable period of tolling. "In other words, the running of the statute of limitations would not negate the probable cause showing that criminal activity had occurred, but potentially could limit plaintiff's criminal liability. Therefore, the running of the

statute of limitations is not dispositive of, and of little, if any, relevance to, the existence of 'a probability or substantial chance of criminal activity,' which, to reiterate, 'is not a high bar.'" *Gonzalez v. United States*, No. 16 Civ. 1494 (KAM), 2018 WL 1597384, at *11 (E.D.N.Y. Mar. 31, 2018) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). To the extent that the defendant rests his argument on the statute of limitations, it fails as a matter of law.

In any event, this is not a case in which an affidavit merely described a one-off or old crime, unlikely to be repeated. Rather, the Google Affidavit described and established the defendant's pattern and practice of drugging and sexually assaulting women and his use of the Google Account in connection with doing so, and not just any pattern and practice, but one that took place abroad and with respect to individuals whom the defendant met through his international work—precisely the kinds of individuals the assault of whom is prohibited by the subject offenses. (Def. Ex. B ¶¶ 9-10, 16-17, 20-21). The defendant's contention that, notwithstanding this obvious, repeated, and recent pattern, Judge Cott could not have found probable cause to believe that the Google Account would contain evidence of the subject offenses ignores that probable cause determinations may rest on "common-sense," and that the question is merely whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also Singh*, 390 F.3d at 182 (probable cause "may be based on reasonable inference from the facts presented based on common sense and experience" (internal quotation marks and citations omitted)); *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981) ("Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant."). The requisite standard was met here.

### c. The Apple Warrant

Finally, the defendant asserts that the Apple Warrant was based on a "set of speculations" about how iCloud accounts can be used, without a connection to this case. (Def. Mot. 12-13). That assertion is irreconcilable with the record.

In the Apple Affidavit, among other things, Special Agent Granberg identified specific communications between the defendant and his victims through text messages and/or Internet-based communications applications, explained how users of such applications may elect to back up messages to cloud-storage platforms, such as iCloud, and noted that evidence indicated that the defendant himself used several relevant iCloud features, including Messages in iCloud. (Def. Ex. D ¶¶ 17(c)-(e), 28, 33-34). In short, she explained why, *in this particular case*, there was reason to believe that the iCloud Account would contain evidence of the pertinent subject offenses.

Of course, she also explained that, in her training and experience, iCloud accounts "often include instant messages, emails, voicemails, photos, videos, and documents that may have been created and used in furtherance or that constitute evidence of criminal activity like the offenses under investigation." (*Id.* ¶ 29). And she elaborated that, in her training and experience, "individuals who commit crimes of sexual assault often retain information relating to their victims, including photographs." (*Id.* ¶ 33). This information was relevant, proper, and helped to support probable cause. *See Gates*, 462 U.S. at 231-32. Special Agent Granberg then explained that, based on her participation in this particular investigation, including her review of the Facebook Account, it appeared that the defendant had saved both photographs of women for years and also documents, such as a spreadsheet to keep track of sexual partners and, as is relevant here, the evidence indicated that he used several iCloud features, including iCloud Photos, iCloud Backup, and iCloud Drive. (Def. Ex. D ¶¶ 17(d), 21(c), 33-34). In short, the Apple Affidavit rested on far more

than how individuals use iCloud generally; it detailed this investigation, facts uncovered to date, and why there was probable cause to believe that, in this particular case, the iCloud Account would contain pertinent evidence.

## B. The Search Warrants Were Sufficiently Particular

The defendant next argues that even if they were supported by probable cause, the Search Warrants lacked particularity because while they "identify the types of records, communications and evidence" that law enforcement was permitted to search for and seize, the "list is effectively limitless in its comprehensiveness." (Def. Mot. 15-16). The defendant contends that the Search Warrants accordingly leave "too much discretion to investigating officers as to what items to seize." (*Id.* at 16). These arguments are baseless.

### 1. Applicable Law

"To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017). It must (i) "'identify the specific offense for which the police have established probable cause,'" (ii) "'describe the place to be searched,'" and (iii) "'specify the items to be seized by their relation to designated crimes.'" *Id.* (quoting *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013)). "The Fourth Amendment does not require a perfect description of the data to be searched and seized." *Id.* at 100. Indeed, given the nature of electronic evidence, "[s]earch warrants covering digital data may contain 'some ambiguity.'" *Id.* (quoting *Galpin*, 720 F.3d at 446). "[A] search warrant does not necessarily lack particularity simply because it is broad." *Id.* When a search warrant limits the scope of the search to evidence of particular federal crimes, and gives an "illustrative list of seizable items," the search warrant is sufficiently particular. *United States v. Riley*, 906 F.2d 841, 844-45 (2d Cir. 1990).

The purpose of requiring warrants to specify the items to be seized is to prevent "general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *Id.* at 844. But to achieve this purpose, a warrant need not describe the items to be seized in such detail as to eliminate the executing officer's discretion completely. *See id.* at 844-45; *see also United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 664712, at *5 (S.D.N.Y. Feb. 25, 2013) ("The Fourth Amendment does not require that every item or document to be seized be specifically identified in the warrant."). Rather, a warrant's description of the items to be seized need only be "sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotation marks, citations, and alterations omitted).

### 2. Discussion

The Search Warrants were plainly sufficiently particular to "enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). Indeed, the Search Warrants easily satisfied each of the three components of particularity outlined in *Galpin*, 720 F.3d at 445-46.

*First*, the Search Warrants identified the specific offenses for which probable cause had been established, as the defendant does not appear to dispute. (Def. Mot. 15). The Search Warrants limited the items to be seized to evidence of the enumerated subject offenses and listed the items to be seized by their relation to the subject offenses.

*Second*, as the defendant concedes, the Search Warrants described "the place to be searched," *Galpin*, 720 F.3d at 446, here, the subsets of electronic data associated with each of the

Electronic Accounts and laid out in some detail in Attachment A to each of the Search Warrants. (Def. Mot. 15-16).

*Finally*, the Search Warrants listed specific categories that constitute evidence, fruits, and instrumentalities of the subject offenses, with those categories tailored to the specific facts of this case, *e.g.*, "[e]vidence concerning the identity or location of, and communications with or regarding victims or potential victims of assault or sexual assault, such as women who appear to have had sexual or romantic interactions with Karim Elkorany, or in whom Elkorany expressed sexual interest, " and "[a]ny nude, partially nude, or sexually suggestive photographs of victims, or potential victims, of assault or sexual assault, such as women who appear to have had sexual or romantic interactions with Karim Elkorany, or in whom Elkorany expressed sexual interest." (Def. Ex. F at 4; Def. Ex. G at 4). The defendant asserts in conclusory fashion that these categories of evidence are "effectively limitless" and leave "too much discretion to investigating officers as to what items to seize" (Def. Mot. 16), but he provides no explanation or analysis specific to any of the listed categories. Nor does he point to any specific enumerated categories he believes lack particularity and explain why, in his view, this is so. Indeed, his claim is so conclusory that it need not be considered. *See, e.g.*, *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). In any event, the defendant's claim is undermined

by the plain text of the warrants.  Each of the enumerated categories is both specific and closely tethered to the probable cause described in the affidavits.[4]

Moreover, courts in this circuit have routinely upheld as sufficiently particular warrants that are far broader and more general than those here, including warrants that authorize the seizure of "evidence of" or "evidence, fruits, and instrumentalities of" specified crimes, "including, but not limited to," certain broad sub-categories of evidence.  *See, e.g.*, *Riley*, 906 F.2d at 844 ("In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items."); *see also, e.g.*, *United States v. Ray*, No. 20 Cr. 110 (LJL), 2021 WL 2134861, at *18 (S.D.N.Y. May 26, 2021) (finding sufficiently particular warrant that "limits the agents to seize items only if they are related to the Subject Offenses"); *United States v. Pugh*, No. 15 Cr. 116 (NGG), 2015 WL 9450598, at *22 (E.D.N.Y. Dec. 21, 2015) ("In general, warrants that limit a search to evidence relating to a particular crime, and which provide a list of examples as a means of limiting the items to be seized, are upheld when confronted with a particularity challenge."); *United States v. Lustyik*, 57 F. Supp. 3d 213, 227-28 (S.D.N.Y. 2014) (finding sufficiently particular warrants that "broadly describe[] the items to be seized as 'evidence, fruits, or instrumentalities' of specified federal crimes" and "also sets forth an illustrative list of items to be seized," even where "modified by the phrase, 'including but not limited to'"); *United States v. Jacobson*, 4 F. Supp. 3d 515, 524

---

[4]      The Government has produced a set of materials identified to date as responsive to the Facebook Warrant.  Tellingly, the defendant has not pointed to *any* items collected due to the alleged lack of particularity that would have otherwise been excluded.  The review of the Google and iCloud Accounts is ongoing.  The Government has followed a filter protocol for segregating material that is, according to defense counsel, potentially protected by attorney-client privilege or work product protection, but has produced to the defendant in discovery the entire contents of his Google and iCloud Accounts.  The Government will produce the materials responsive under the terms of the Google and Apple Warrants once review for potential privilege is complete and a responsiveness review is undertaken.

(E.D.N.Y. 2014) (finding sufficiently particular warrants that "authorized the seizure of 'evidence, fruits and instrumentalities' of particular federal crimes, and also enumerated ten illustrative categories of items").

The defendant also argues that the Search Warrants are insufficiently particular because they do not expressly incorporate or attach the supporting affidavits.  (Def. Mot. 16-17).  In support of the proposition he advances, the defendant cites *United States v. Cioffi*, 668 F. Supp. 2d 385, 389 (E.D.N.Y. 2009), in which the court granted a motion to suppress a search warrant that listed various categories of records and other stored information with "no provision limiting the emails to be seized to those containing evidence of the crimes charged in the indictment or, indeed, of any crime at all." (Def. Mot. 16).  He also cites *United States v. Barthelman*, No. 13 Cr. 10016 (MLB), 2013 WL 3946084, at *11 (D. Kan. July 31, 2013), in which the court held that a warrant was not sufficiently particular because it failed to reference a particular criminal statute and simply requested "any and all evidence of communications used in the furtherance of the violation of laws of the State of Ohio." (Def. Mot. 16-17).  *Cioffi* and *Barthelman* are plainly inapposite.  Each of these two cases involved warrants that failed to limit the seizure of items with reference to a particular criminal statute *at all*, in contrast to the Search Warrants, which specifically referenced and limited seizure to instrumentalities and evidence demonstrating a violation of the enumerated offenses.  *See United States v. Nejad*, 436 F. Supp. 3d 707, 731 (S.D.N.Y. 2020) (concluding that *Cioffi* was "merely a reformulation of the particularity principle . . . that warrants must confine searches to evidence of particular crimes," and upholding warrants that did so); *United States v. Deppish*, 994 F. Supp. 2d 1211, 1221 (D. Kan. 2014) (concluding that *Barthelman* was "inapposite" because it involved a "warrant[] that failed to limit the seizure of items with reference

to a particular criminal statute, in contrast to the instant warrant, which specifically referenced and limited seizure to instrumentalities and evidence demonstrations [a particular offense]").

In sum, because the Search Warrants set forth the specific criminal statutes of which "evidence, fruits, and instrumentalities" were to be seized and delineated specific categories of types of evidence to guide the officers in executing the warrant, the Search Warrants were sufficiently particular.

### C. The Search Warrants Were Not Overbroad

The defendant also argues that the evidence from the searches executed pursuant to the Facebook and Google Warrants must be suppressed because they authorized the search and seizure of "all information associated with the Facebook account and nearly the universe of information associated with the Gmail account based on very few communications during very specific periods of time." (Def. Mot. 19). This argument, too, cannot be reconciled with the record.

#### 1. Applicable Law

The probable cause and particularity requirement intersect in the doctrine of overbreadth. "[A warrant] is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (internal quotation marks and citations omitted). Thus, broad language in a search warrant may be justified if the criminal methods are extensive and the criminal activity is pervasive. For example, "'[w]hen the criminal activity pervades [an] entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements.'" *Ulbricht*, 858 F.3d at 102 (quoting *U.S. Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989)).

In this context, "it is important not to confuse the separate context of the seizure of an item . . . with the search itself." *United States v. Ulbricht*, No. 14 Cr. 68 (KBF), 2014 WL 5090039, at *14 (S.D.N.Y. Oct. 10, 2014), *aff'd*, 858 F.3d 71 (2d Cir. 2017). That is:

> It has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized. For instance, warrants have long allowed searching a house high and low for narcotics—indeed, it is rare that drug dealers point out the hidden trap in the basement—or reviewing an entire file cabinet to find files that serve as evidence of money laundering activity, which might be intermingled with files documenting lawful and irrelevant activity.

*Id.*; *accord Riley*, 906 F.2d at 845. Applying this rationale to the context of electronic evidence, "[c]ourts in this Circuit . . . have uniformly held that law enforcement need not rely upon an email host company or any other private party to sift through emails to determine what is relevant and that it may obtain a warrant to request all emails from an account." *Ray*, 2021 WL 2134861, at *25 (citing *United States v. Redzepagic*, No. 17 Cr. 228 (DRH), 2020 WL 5232066, at *7-10 (E.D.N.Y. Sep. 2, 2020); *Nejad*, 436 F. Supp. 3d at 729; *Ulbricht*, 2014 WL 5090039, at *13-15; *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *7-8 (S.D.N.Y. Oct. 9, 2020)); *see also In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxx@gmail.com Maintained at a Premises Controlled by Google, Inc.* ("*In re Google Warrant*"), 33 F. Supp. 3d 386, 393 (S.D.N.Y. 2014) ("[W]e view it as well established that a search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government.").

## 2. Discussion

The defendant claims that two of the Search Warrants were overbroad, calling into question two separate judges' probable cause findings. In particular, as noted above, he claims that the Facebook Warrant and the Google Warrant authorized the search and seizure of "all information" associated with his Facebook account and "nearly the universe of information" associated with his Google Account "based on very few communications during very specific periods of time." (Def. Mot. 19). That is demonstrably incorrect. The Search Warrants rested on far more than just a "very few communications." *See supra* Section I.A (discussing ample probable cause set forth in each of the challenged search warrant affidavits).

Nor was it remotely improper for the Government to obtain the entirety of the pertinent accounts in order to review them for evidence of subject offenses. As noted above, "[i]t has long been perfectly appropriate to search the entirety of a premises or object as to which a warrant has issued based on probable cause, for specific evidence as enumerated in the warrant, which is then to be seized." *Ulbricht*, 2014 WL 5090039, at *14. This general rule applies with equal force to searches of Facebook, email, and iCloud accounts. Indeed, in the suppression context, courts have routinely "upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant." *In re Google Warrant*, 33 F. Supp. 3d at 394 (collecting cases). In *In re Google Warrant*, for example, the court approved a warrant authorizing the seizure of all emails, all address book information, and "a variety of other information" associated with a particular Google account. *Id.* at 388. In approving the warrant, the court explained it was "well-established that a search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed

23

to the Government." *Id.* at 393; *see also Ray*, 2021 WL 2134861, at \*25-27 (denying motion to suppress fruits of iCloud and email warrants on similar grounds); *Ulbricht*, 2014 WL 5090039, at \*14-15 (denying motion to suppress fruits of Google, Facebook, and computer warrants on similar grounds); *United States v. Bowen*, 689 F. Supp. 2d 675, 682 (S.D.N.Y. 2010) (Fourth Amendment does not require law enforcement to "ascertain which e-mails are relevant before copies are obtained from the internet service provider for subsequent searching"); *United States v. McDarrah,* No. 05 Cr. 1182 (PAC), 2006 WL 1997638, at \*9-10 (S.D.N.Y. July 17, 2006) (denying motion to suppress seizure of "[a]ll stored electronic mail and other stored content information presently contained in" a specified email account), *aff'd,* 351 F. App'x 558 (2d Cir. 2009).[5]

The defendant does not appear to disagree, except to the extent that he states that the Facebook Warrant and the Google Warrant directed the service providers to produce, in addition to all messages and emails, "all information regarding the accounts, such as address book, subscriber and payment information, transactional records, customer correspondence and preserved or backup records without any temporal limitation," yet, in his view, the affidavits "were silent as to the relevance of these non-email or non-message categories" and, therefore, failed to justify their production. (Def. Mot. 17-18). This argument has no legal or logical support. A discussed above, courts uniformly have held that it is proper for warrants to require the production

---

[5]      Simply as a practical matter, the Government must search an account to obtain evidence of the specified subject offenses, because service providers such as Google do not (and could not) conduct their own searches of accounts prior to turning over the contents of the accounts to the Government pursuant to a judicially-authorized search warrant. *See In re Google Warrant*, 33 F. Supp. 3d at 394-95 (describing as "unrealistic" and an "enormous" burden, the notion that a service provider "could be expected to produce the materials responsive to categories listed in a search warrant" by conducting those searches itself "without having been trained in the substance of the investigation").

of the entirety of an account, so that it may reviewed. *See, e.g.*, *In re Google Warrant*, 33 F. Supp. 3d at 393 ("[A] search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government.").  And if there is probable cause to believe that the contents of communications are relevant, including to identify victims when an offense has been committed over a number of years abroad, then there is probable cause to believe that information that helps to demonstrate the defendant's usage of the pertinent account at pertinent times, and his location, or otherwise connect him to the account, is relevant. The defendant does not cite any case to have accepted the proposition that he advances, much less accepted it in comparable circumstances, and the Government is unaware of any.  That is unsurprising, because the claim is precisely the kind of "hypertechnical" one that the Supreme Court has cautioned against.  *Ventresca*, 380 U.S. at 109.  Moreover, the defendant ignores, for example, that the Google Warrant set forth Special Agent Granberg's training and experience that "Google account information, IP logs, stored electronic communications, and other data retained by the Provider can indicate who has used or controlled a Google account or stored content in an account" and "may be evidence of who used or controlled the Google account at a relevant time." (Def. Ex. B ¶ 23).  As noted above, the training and experience of law enforcement can bear significantly on probable cause determinations.  *Gates*, 462 U.S. at 232.

In any event, the remedy for an overbroad or insufficiently particular warrant is not suppression of all evidence, but only the portion seized pursuant to the overbroad or insufficiently particularized portion of the warrant.  *See, e.g.*, *George*, 975 F.2d at 79 ("When a warrant is severed (or redacted) the constitutionally infirm portion—usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed;

evidence seized under the valid portion may be admitted.").  Even if the defendant were therefore correct that certain types of non-content information should not have been seized, the remedy for that alleged violation would be suppression only of those categories, not the contents of his communications.  *See id.*

Finally, although the defendant conclusorily objects that the Google Warrant sought records pertaining to a period of a number of years (Def. Mot. 17-18), the warrant was properly limited in scope by a date range tied to the dates of the crimes for which there was probable cause and the defendant's use of his various accounts in connection with his crimes during the specified time frames.[6]  Not only did the Google Warrant provide a temporal limit, it provided a distinct temporal limit based on the probable cause in the warrant for the defendant's use of that account. (Def. Ex. B ¶ 30).  *See, e.g.*, *United States v. Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) ("[A] time frame is less relevant to a warrant's breadth where the criminal acts are complex and necessarily extend over a significant period of time.").

While the defendant points out that the Facebook Warrant, by comparison, did not specify a date range (Def. Mot. 5-6, 12, 17-18), that is not a basis to suppress the fruits of that warrant.  As described above, the offenses here spanned at least a decade and involved a pattern of activity; it thus was entirely proper to search the entirety of the Facebook Account (particularly since records showed that it was only created in 2005).  Further, the Second Circuit has never held that the lack of a specific time frame in a warrant renders it overbroad or lacking in particularity.  In *Jacobson*, for example, the district court noted that there is no consensus in this circuit as to when a temporal limitation is required in a warrant.  4 F. Supp. 3d at 526.  The district court rejected an argument

---

[6]     The defendant does not explicitly make these arguments with respect to the Apple Warrant. Nevertheless, the Government notes that the Apple Warrant also provided a temporal limit based on the probable cause set forth in the Apple Affidavit.  (Def. Ex. D ¶ 37).

that the warrants in question, which did not contain any temporal limitation, lacked particularity where, as here, the "crimes under investigation were complex and concerned a long period of time, not simply one or two days of criminal activity." *Id.*

But even if the defendant were correct that the Facebook Warrant should have included a temporal limitation, suppression would not follow, because there is no precedent holding that is required even where offenses were committed in shorter periods. The defendant therefore cannot show that the Facebook Warrant was not executed in good faith reliance on the magistrate's authorization. *See, e.g.*, *Levy*, 2013 WL 664712, at *10-11 (rejecting challenge to warrant that did not include any time frame at all, where "no controlling authority requires a specific time frame"); *Hernandez*, 2010 WL 26544, at *12 ("[T]he fact that the precise relevance of the absence of an express time frame on the particularity and breadth of warrant has yet to be settled in this Circuit further supports the idea that agents . . . should be protected by the 'good faith' exception."); *see generally United States v. Clark*, 638 F.3d 89, 105 (2d Cir. 2011) (no bad faith absent controlling precedent). Indeed, as described below, because the Search Warrants were executed in good faith, suppression would not follow regardless of whether this or any other the defendant's arguments described above had merit.

**D. The Search Warrants Were Executed in Good Faith**

The defendant claims that the Government cannot rely upon the good faith exception to suppression because the Search Warrants lacked particularity and were "so facially deficient that any reliance upon them by the executing agents was objectively unreasonable." (Def. Mot. 19). That claim is no more than a repackaging—and a conclusory one at that—of his prior meritless claims, and it should be rejected.

### 1. Applicable Law

Under the so-called "good faith" exception, the exclusionary rule and its remedy of suppression does not apply where evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. In announcing this principle, the Supreme Court noted that suppression could have no deterrent effect on law enforcement that acted on the objectively reasonable assumption that their conduct did not violate the Fourth Amendment. *Id.* at 918-20. In analyzing the applicability of the good faith exception, the pivotal question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. If the reviewing court finds that the officers' reliance on the warrant was objectively reasonable, suppression is not warranted. *See, e.g.*, *Singh*, 390 F.3d at 183. Moreover, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). Exclusion should be a "last resort" rather than a "first impulse." *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (internal quotation marks and citation omitted). The exclusionary rule should be used only where law enforcement "'exhibit[s] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *United States v. Raymonda*, 780 F.3d 105, 117-18 (2d Cir. 2015) (quoting *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013)).

As a result, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (internal quotation marks and citations omitted); *see also Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (noting that the "issuance of a warrant by a neutral magistrate, which

depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause"). Indeed, the good faith exception does not apply only in four narrow circumstances:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923).

## 2. Discussion

Even if this Court were to find that any of the Search Warrants were lacking in probable cause, insufficiently particular, and/or overbroad—and they were none of these things—the evidence seized pursuant to the warrants should not be suppressed because they were relied upon in good faith.

There is no serious suggestion that the agents lacked a good faith belief that the Search Warrants were proper and could be relied upon. Nor could there be. As an initial matter, there is no suggestion that the agents misled any of the issuing judges in any respect whatsoever. On the contrary, the defendant notes that the agents included facts that arguably cut against issuance of the Search Warrants. (*See* Def. Mot. 2-4). Nor is there any suggestion that the issuing judges— including this Court, a magistrate judge in this district, and a magistrate judge in another district— all "wholly abandoned [their] judicial role." *Moore*, 968 F.2d at 222. Indeed, the fact that three separate federal judges independently approved the Search Warrants, based on substantially the same facts, is itself strong evidence to the contrary.

For substantially the same reasons, there is no basis to find that the Search Warrants "so lacked probable cause" that the agents' "reliance upon them was unreasonable." *Id*. That the

affidavits were lengthy, thorough, accurate, and approved by three different federal judges all belies the notion that it was "unreasonable" for the agents to rely on the warrants. This is true irrespective of whether, in hindsight, this Court were to determine that probable cause was lacking, in whole or in part (although it was not lacking). *See, e.g.*, *Leon*, 468 F.3d at 921 ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ."); *United States v. Falso*, 544 F.3d 110, 129 (2d Cir. 2008) (declining to hold that agents acted unreasonably in relying on judge's probable cause determination because "the error . . . was committed by the district court in issuing the warrant, not by the officers who executed it"); *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (explaining that any error in issuance of warrant was "attributable to the magistrate who determined that the facts as alleged by the agents established probable cause").

Finally, the Search Warrants themselves plainly were not "so facially deficient" that reliance on them was unreasonable. *Moore*, 968 F.2d at 222. The Search Warrants, which were issued after review of lengthy affidavits by three independent judges, outlined the specific crimes of which evidence, fruits, and instrumentalities were sought and set forth categories of evidence, tailored to the facts of this case, to be seized that further cabined the scope of the Search Warrants. It cannot seriously be asserted that the warrants here were so obviously, facially flawed that a law enforcement officer would have had to have known, at the time, that the searches, despite being authorized, were simply illegal. Indeed, as the Second Circuit has noted, "[t]he example of a facially deficient warrant provided by the *Leon* Court is one that does not 'particularize the place to be searched or the things to be seized.'" *United States v. Stacy*, 802 F. App'x 611, 614 (2d Cir. 2020) (quoting *Leon*, 468 U.S. at 923). The Search Warrants were nothing like that.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion should be denied.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: s/_____
Lara Pomerantz
Amanda L. Houle
Daniel C. Richenthal
Robert B. Sobelman
Assistant United States Attorneys
(212) 637-2343/2194/2109/2616