UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X

THE UNITED STATES OF AMERICA,

      - against –

KARIM ELKORANY,

             Defendant.

------------------------------X

**MEMORANDUM AND ORDER**

20 Cr. 437 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    On May 24, 2022, Karim Elkorany ("Elkorany" or "defendant") pleaded guilty to making false statements to federal agents, in violation of 18 U.S.C. § 1001, and assaulting an internationally protected person, in violation of 18 U.S.C. § 112(a).  ECF Nos. 56-57.  In his written plea agreement, Elkorany admitted to drugging and/or sexually assaulting at least nineteen victims while working abroad in international aid.  This included, in relevant part, the drugging and sexual assault of (1) Victim-1 in November 2016 while they were working together in Iraq; and (2) Victim-2, on multiple occasions, between 2014 to 2019 in Iraq and the United States.

    On October 28, 2022, this Court sentenced Elkorany to fifteen years' imprisonment.[1]  ECF No. 74.  At sentencing, the Court ordered

---

[1] The Second Circuit affirmed the reasonableness of Elkorany's sentence in a summary order issued on April 4, 2024.  See United States v. Elkorany, No. 22-2944, 2024 WL 1458664 (2d Cir. Apr. 4, 2024).

restitution for Victim-14 and partial restitution for Victim-1, but left open a final restitution order as to Victim-1 as well as the other victims to the extent they sought restitution.  ECF No. 78 at 80:2-25.  On November 8, 2022, the Court memorialized that determination, ordering Elkorany to pay restitution in the amount of $15,263.76, pursuant to 18 U.S.C. §§ 3663, 3663A, and 3663, to Victim-1 and Victim-14,[2] but qualifying that such restitution was "subject to modification as to both amounts and as to additional victims pursuant to 18 U.S.C. § 3664(d)(5), as stated at sentencing."[3]  ECF No. 75.

Despite engaging in settlement discussions, both Victim-1 and Victim-2 were unable to reach agreement with Elkorany as to their claims for restitution.  Accordingly, the Government filed letters from both victims seeking a specific amount of restitution to be ordered by the Court.  See ECF Nos. 90-1 ("V1 Mot."), 93 ("V2 Mot.").  Victim-1 seeks restitution in the amount of $98,013.35,

---

[2] Victim-1 stated that of this initial restitution amount, she received $6,683.76 for costs she incurred for medical treatment and travel to government agencies in connection with the investigation of her assault.  V1 Mot. at 1.

[3] Further, in his plea agreement, Elkorany agreed to make restitution in an amount ordered by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664 to Victim-1 through Victim-19.

and Victim-2 seeks restitution in the amount of $33,822.57.  V1 Mot. at 2; ECF No. 108 ("V2 Reply").[4]

## I.   **Legal Framework**

The Mandatory Victims Restitution Act ("MVRA") provides for mandatory restitution to victims of certain crimes, including offenses resulting in physical injury. 18 U.S.C. § 3663A(c)(1)(B). A "victim" for purposes of the restitution statute is an identifiable person "directly and proximately harmed as a result" of the defendant's criminal conduct.  Id. § 3663A(a)(2).  For offenses resulting in bodily injury, the MVRA requires the defendant to reimburse the victim for "income lost" as a result of the offense.  Id. § 3663A(b)(2)(C).  This requirement has been interpreted to include any "future income lost as a result of the offense of conviction." United States v. Messina, 806 F.3d 55, 67 (2d Cir. 2015).

The "primary and overarching purpose of the MVRA is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of

---

[4] This figure reflects that Victim-2 withdrew her initial restitution request for lost future income because counsel failed to account for additional compensation Victim-2 received as a result of being stationed overseas.  V2 Reply at 3.

well-being." <u>United States v. Boccagna</u>, 450 F.3d 107, 115 (2d Cir. 2006) (internal quotation marks omitted). As such, a district court has "broad discretion" to determine restitution. <u>United States v. Milstein</u>, 481 F.3d 132, 137 (2d Cir. 2007). While losses cannot be "hypothetical or speculative," the calculation of the losses sustained by a victim need not be "mathematically precise." <u>United States v. Gushlak</u>, 728 F.3d 184, 195 (2d Cir. 2013). Indeed, the MVRA only demands a "reasonable approximation of losses supported by a sound methodology." <u>Id.</u> at 196. And though a dispute as to the proper restitution amount must be resolved "by the preponderance of the evidence," 18 U.S.C. § 3664(e), the Second Circuit has admonished that the "preponderance standard must be applied in a practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." <u>Gushlak</u>, 728 F.3d at 196.

## II.  <u>**Application**</u>

Because the restitution analyses differ in critical respects, the Court will first address Victim-1's request for restitution before turning to Victim-2's request.

### A. **Victim-1**

Victim-1 seeks in restitution a total of $98,013.35 based on wages she lost between January 2017 and September 2022 as a result of Elkorany's sexual assault in November 2016.  She arrives at that figure by comparing her average annual income in the five-year period before her assault, 2011 to 2015, to her average annual income in the five-year period after her assault, 2017 to 2021, which she calculates was $11,503.20.  Elkorany does not dispute that this is an acceptable method of estimating Victim-1's lost wages but strongly disagrees with the specific years Victim-1 selected in calculating her average pre-assault income.

As Victim-1 acknowledges, remuneration in her field of employment is often not based on a fixed annual salary but instead fluctuates greatly from year to year.  Victim-1's own earnings history clearly reflects such fluctuation.  Indeed, Victim-1 made more than $50,000 in 2011 but made only $8,742 in 2016 before she was assaulted in November that year.  Her yearly income between 2011 and 2016 is summarized in this chart:

| Year | Gross Income |
|------|--------------|
| 2011 | $50,375 |
| 2012 | $35,425 |
| 2013 | $33,295 |
| 2014 | $13,170 |
| 2015 | $10,480 |
| 2016 | $8,742 |

-5-

Given the dramatic difference between Victim-1's earnings in 2011 and her earnings in 2016, almost a sixfold difference, the Court finds that the best measure of her average pre-assault income eliminates both of those figures as outliers.  Relying on the four-year period from 2012 to 2015, Victim-1's average annual pre-assault income is $23,092.50.  With an average post-assault annual income of $11,503.20 from 2017 to 2021,[5] Victim-1's average income is $11,589.30 less per year after the assault.  This difference of $11,589.30 must then be multiplied by 5.75 to compensate Victim-1 for lost wages in the period between January 2017 and September 2022 (five years and nine months or five and three-quarter years).  Accordingly, Victim-1 is awarded $66,638.48 in restitution.[6]

**B. Victim-2**

Victim-2 seeks a different type of compensation, namely, medical expenses related to multiple hip surgeries she received in 2019 and lost income from the paid leave she took as a result of those treatments.   Whether Victim-2 is entitled to such compensation boils down to whether the Government (via Victim-2's

---

[5] Elkorany does not dispute that Victim-1's average post-assault income between 2017 and 2021 is $11,503.20.

[6] In calculating the same amount, Elkorany's counsel seems to have only multiplied the difference in pre- and post-assault income by five years, neglecting to include the nine months of 2022 encompassed in the relevant restitution period.

-6-

submissions) has carried its burden of proving that Elkorany's
conduct was the "proximate cause" of Victim-2's medical issues.
<u>United States v. Goodrich</u>, 12 F.4th 219, 229-31 (2d Cir. 2021).
Based on the evidence (or lack of evidence) before it, the Court
cannot conclude that this burden has been satisfied.

Although Victim-2 claims that Elkorany's conduct was the sole
reason for her hip surgeries, she provides no medical records or
other expert opinion to corroborate this assertion.  To be sure,
the Court well understands that Victim-2 suffered tremendously
from Elkorany's conduct.  However, the proposition that Elkorany's
assaults -- the majority of which occurred in 2014 and 2015 -- led
directly to Victim-2's multiple hip surgeries in 2019 is simply
not one that can be sustained in the absence of an expert opinion
to support it.  Again, it is certainly possible that Elkorany's
conduct was in fact the cause of Victim-2's hip injuries, but with
only the record before us, and in the absence of any expert
evidence, reaching that conclusion would require the Court to
engage in speculation, which the Court is precluded from doing.
For these reasons, the Court rejects Victim-2's restitution

requests for the medical expenses she incurred from 2019 onward and the paid leave she took as a result of those treatments.[7]

That said, the Court awards Victim-2 restitution for her dental care and the medical treatment she received in the direct aftermath of Elkorany's initial assaults.  As for the dental care, the record clearly supports Victim-2's claim that she ground her teeth as a result of Elkorany's conduct and thus required significant dental care to address those issues.  Likewise, Victim-2's requests for compensation for expenses she incurred in connection with four medical appointments she attended between 2014 and 2015 is well-supported by the record given that such appointments directly coincide with the height of Elkorany's assaults of Victim-2.  Therefore, Victim-2 is awarded $2,570.09 in restitution for these expenses.

**SO ORDERED.**

Dated:    New York, New York
          April 9, 2024

                              _____
                               NAOMI REICE BUCHWALD
                               UNITED STATES DISTRICT JUDGE

---

[7] Because the Court cannot conclude that the offense conduct is the proximate cause of her 2019 medical treatments, we must also reject Victim-2's restitution request for transportation costs associated with those treatments.

-8-